## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | |
|---|---|
| **KENNETH FOLTZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TDB COMMUNICATIONS, INC.**, a Kansas corporation,<br><br>Defendant. | Case No.:<br><br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Kenneth Foltz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Collective and Class Action Complaint against TDB Communications, Inc. (hereinafter referred to as "Defendant") and states as follows:

## PRELIMINARY STATEMENT

1.      This is a collective and class action that arises out of Defendant's systematic failure to compensate its employees for all time worked in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and common law.

2.      Plaintiff and the putative collective members consist of current and former call center agents or similar positions ("Agents"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Agents for all pre-, mid-, and post-shift off-the-clock work.

3.       Regardless of the specific job title, all Agents: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and

attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

4.      In particular, Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

5.      An Agent's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6.      Additionally, Defendant required its Agents to perform similar unpaid tasks during their lunchbreaks, ensuring that they were "phone ready" at the moment their unpaid lunchbreaks ended, and additionally, after their scheduled shifts, logging out of the aforementioned programs and shutting down their computers.

7.      The Agents routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those Agents who were scheduled and paid for only forty (40) hours per week, actually worked over forty (40) hours per week without the required overtime premium for hours worked over forty (40) per week.

8.      Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Agents to complete this unpaid work.

9.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.*

10.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." See *Id.*, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

11.     Defendant's practice of failing to compensate its Agents for all hours worked violated the Agents' rights under the FLSA.

12.     Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former hourly call center agents who worked for Defendant at any time during the past three years.***

13.     Defendant is liable for its failure to pay it Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

14.     Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-, mid-, and post-shift work performed for Defendant, an equal amount for

liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

16.     This Court has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiff and Defendant reside in different states.

17.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

18.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the Agents, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

19.     This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of Kansas, conducts business within the state of Kansas, and is registered with the Kansas Secretary of State.

20.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

21.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

22.      Plaintiff Kenneth Foltz is a resident of Palmhurst, Texas.  Plaintiff worked for Defendant as an Agent at Defendant's brick and mortar facility located in Pharr, Texas, and also as a remote Agent for Defendant from his home, from approximately June 2018 until approximately June 2023. Defendant compensated Plaintiff for his services as an Agent in the form of an hourly wage, most recently at the rate of $19.00 per hour.  Plaintiff signed a consent to join this collective action lawsuit. ***Exhibit B***.

23.      Additional putative Collective members were or are employed by Defendant as Agents in Kansas and potentially other states during the past three years and their consent forms will also be filed in this case.

24.      According to Defendant's website, Defendant "offers creative call center management, technology, customer service, data analysis, and performance-based solutions to your inbound and outbound call center needs" delivering up to "a 2,000-person customer service staff housed at TDB's facilities to "handle staffing and operation of [] call center" projects for commercial and government customers which services include, but are not limited to, Telehealth, Telemedicine, Medical Call Center Staffing, Training and Management, Clinical Healthcare Services, Mobile Healthcare Services, Air Medical Services, Medical Claims, etc. [1]

25.      Defendant TDB Communications, Inc. is incorporated in the State of Kansas with its principal place of business located at 4217 20th Street NE, Washington, DC 20018.

---

[1] *See* https://www.tdbgov.com/ (last visited December 8, 2024); https://www.tdbgov.com/services (last visited December 8, 2024).

26.     Defendant maintains a registered office in Lenexa, Kansas, and its registered agent can be served as follows: TDB Communications, Inc., 10901 W 84th Terrace, Suite 105, Lenexa, KS 66214.

27.     Upon information and belief, Defendant has employed hundreds of Agents – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

28.     Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

29.     Defendant employs hundreds of Agents who work at Defendant's physical call centers across the United States, as well as remotely from their homes, providing customer, sales, and other support to Defendant's customers throughout the United States.[2]

30.     Defendant has employed hundreds of Agents over the past three years as part of its call centers and remote work environment to handle consumer and customer phone calls concerning various issues.

31.     Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

32.     Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including but not limited to: offer letters, paystubs, and/or other payroll records.

33.     Defendant's Agent position typically had schedules that require employees to

---

[2] *See* https://www.tdbgov.com/ (last visited December 8, 2024).

work at least eight (8) hours per day (with a thirty (30) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek. However, in some workweeks, Defendant's Agents work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's Agents strictly adhere to Defendant's baseline forty (40) hour schedule, the Agent schedule results in Agents working overtime on a weekly basis.

34.     Throughout their employment with Defendant, Plaintiff and the other Agents' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

35.     Once hired, Defendant provides all Agents with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Agents receive is substantially, if not entirely, the same and all Agents are subject to the same disciplinary policies.

36.     Plaintiff and other similarly situated Agents are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendant's Agents to be logged in and have loaded all of their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. An Agent's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendant forces its Agents to perform the boot-up and login process before clocking into Defendant's timekeeping system.

37.     All of Defendant's Agents use the same or similar computer networks, or software, programs, and applications in the course of performing their job responsibilities. These

7

programs and applications are an integral and important part of the Agents' work and they cannot perform their jobs without them.

38.     Once training is completed and in order to perform their job duties, Plaintiff and all other Agents are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiff and all other Agents are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

39.     Defendant has similar policies which prevented Plaintiff and all other Agents from "clocking in" or "out" during their lunch break, or after their scheduled shifts are completed.

40.     Plaintiff and all other similarly situated Agents are also trained or instructed to "clock out" before closing all work applications and systems to make certain they are "clocked out" the moment they are done fielding calls.

41.     The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other Agents spend booting up, logging in, and logging off of their computers directly benefits Defendant and is integral and indispensable to the Agents' job responsibilities.

42.     Despite knowing Plaintiff and all other Agents perform this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

43.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

44.     Because Defendant requires its Agents to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations

of the total amount of time Agents spend working for Defendant.  Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

45.     Despite its ability to track the amount of time Plaintiff and other Agents spend in connection with the pre-, mid-, and post-shift boot-up, login, and log-out processes, Defendant failed to pay Plaintiff and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with its Agents.

46.     Plaintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid.

47.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

**A.  Pre-Shift Off-the-Clock Work**

48.     Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Agents' job performance.

49.     Defendant uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

50.     Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

51.     Upon arriving to their home computer, Defendant's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work.

52.     The pre-shift boot-up and login process generally consisted of the following steps:

    a.     The Agents turned on or woke up their computer;

    b.     The Agents next logged into their VPN application;

    c.     The Agents would then log in to Defendant's website portal to access company information;

    d.     The Agents next logged in to the Microsoft Teams application;

    e.     Next, Agents opened Outlook, checked and responded to company emails, and ensured all of their systems were operational;

    f.     Agents next opened several other project-specific applications;

    g.     Agents would then "punch in" to their Avaya phone system and start receiving customer calls.

53.     The boot-up and login process described above took substantial time on a daily basis, ranging from twelve (12) to fifteen (15) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

54.     Agents were required to complete each of these tasks prior to "punching in," as Agents could not be "phone ready" until these tasks were complete.

55.     Defendant's Agents did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Agents worked off-the-clock for at least twelve (12) to fifteen (15) minutes (or more) before each shift for which they were never compensated.

56.     If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

57.    Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

58.    Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and "clocked in" on time.

59.    Defendant's policies and practices discouraged its Agents from recording all time worked.

60.    Despite having express and constructive knowledge of its Agents' pre-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

61.    Defendant's Agents are not compensated for all of this time because Defendant prohibits Agents from clocking into its timekeeping software before the start of their scheduled shift.

62.    The pre-shift off-the-clock work performed by Agents directly benefits Defendant, and is integral and indispensable to their job duties and responsibilities as Agents.

**B.    Mid-Shift Off-the-Clock Work**

48.    Defendant promises its Agents with one (1) scheduled unpaid thirty (30) minute meal period during each work shift.

49.    However, Defendant also required its Agents to perform off-the-clock work during these unpaid meal periods, including returning from the thirty (30) minute meal period approximately three (3) to five (5) minutes early in order to have enough time to log back in to Defendant's programs and software prior to resuming their shifts. This process was similar to the

pre-shift login process described above (albeit abbreviated), and this time went unpaid.

50.     According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (***Exhibit A***, Fact Sheet #64 at p. 2).

51.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

52.     Instead of complying with the law, Defendant does not provide Agents with *bona fide* meal periods because Defendant requires Agents to resume taking live calls promptly at the end of their scheduled meal breaks, meaning that Agents must return to their computer stations prior to the end of their unpaid meal breaks to log back in and reconnect to computer programs.

53.     The mid-shift off-the-clock time worked by Defendant's Agents directly benefitted Defendant and the process was an integral and indispensable part of the Agents' job responsibilities.

54.     Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

55.     Defendant had express and constructive knowledge that its Agents took unpaid meal periods and that its Agents also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and "clocked in" on time for their shifts to resume.

56.     Despite having express and constructive knowledge of its Agents' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

57.     The unpaid off-the-clock work Plaintiff and other Agents performed during their lunch breaks and prior to clocking back into Defendant's timekeeping system is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Agents.

**C.  Post-Shift Off-the-Clock Work**

58.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Agents are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

59.     The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from three (3) to five (5) minutes per shift.

60.     Defendant's Agents are also not paid for their post-shift off-the-clock work.

61.     The post-shift off-the-clock work Plaintiff and other Agents perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Agents.

**D.  <u>Plaintiff's Exemplary Workweek</u>**

62.    The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides his paystub for the pay period of:

<strong>Pay Period of 12/10/2023 to 12/23/2023</strong>

- Plaintiff was paid at a rate of $19.00 per hour for his 40.00 regular hours per work week (2) during this pay period.

- With unpaid pre-shift time in the range of ten (10) to fifteen (15) minutes per shift at five shifts per week; and

- unpaid mid-shift time in the range of three (3) to five (5) minutes per shift at five shifts per week; and

- unpaid post-shift time in the range of three (3) to five (5) minutes per shift at five shifts per week;

- Plaintiff should have been paid an additional eighty (80) to one hundred and twenty five (125) minutes for each work week (2) during this pay period at his overtime rate of $28.50.

(*See* **Exhibit C**, Plaintiff Foltz December 29, 2023 Earnings Statement).

**E.  <u>Defendant Benefitted from the Agents' Off-the-Clock Work</u>**

63.    At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other Agents in connection with pre-shift, mid-shift, post-shift activities described above.

64.    At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

65.    At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Agents spend in connection with pre-shift, mid-shift, post-shift activities;

however, Defendant has failed to do so and has failed to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

66.    At all relevant times Plaintiff and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

67.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Agents in order to pressure them into performing with pre-shift, mid-shift, post-shift work off-the-clock.

68.    Defendant expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

69.    Defendant instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of twelve (12) to fifteen (15) minutes per day.

70.    Additionally, Plaintiff and all other Agents would have to return from their unpaid meal period early in order to have all work applications and systems fully loaded before resuming their shifts, which takes them in the range of three (3) to five (5) minutes per day.

71.    Similarly, at the end of the shift, Defendant instructed Agents to clock out before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls, which takes them in the range of three (3) to five (5) minutes per day.

72.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the Agents of wages owed for off-the-clock pre-shift, mid-shift, and post-shift activities they performed. Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

73.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

74.     Defendant has known or should have known that the time spent by Plaintiff and other Agents in connection with the off-the-clock pre-shift, mid-shift, and post-shift activities is compensable under the law.  Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

75.     Despite knowing Agents performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

76.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

77.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> **All current and former hourly call center agents who worked for Defendant at any time during the past three years**.

(hereinafter referred to as the "FLSA Collective").  Plaintiff reserves the right to amend this definition if necessary.

78.     Defendant is liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and others similarly situated.

79.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

80.     Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours.

81.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

82.     Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

83.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

      a.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

      b.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for other off-the-clock work, such as the pre-shift boot-up, mid-shift boot-up, and post-shift shut down process; opening and closing all applications, networks and programs and turning and logging off on their computers; and

      c.    Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

84.     Defendant is aware or should be aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

85.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

86.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

87.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift, mid-shift, and post-shift off-the-clock work owed to each employee – do not vary substantially among the proposed FLSA Collective members.

88.     There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

89.     Plaintiff estimates the FLSA Collective, including both current and former Agents over the relevant period, includes hundreds of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

90.     All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 NATIONWIDE CLASS ALLEGATIONS

91.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

*All current and former hourly call center agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the right to amend this definition if necessary.

92.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

93.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

    a.    Whether the pre-shift, mid-shift, and post-shift time Rule 23 Nationwide Class members spend on startup and shutdown activities for each session is compensable;

    b.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    c.    Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

94.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from

the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide

Class members' claims and his legal theories are based on the same legal theories as all other Rule

23 Nationwide Class members.

95.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide

Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage

and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or

conflicting with, the interests of the Rule 23 Nationwide Class.

96.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23

Nationwide Class members to prosecute individual actions of their own given the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer.

97.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel

know of no unusual difficulties in this case and Defendant has advanced networked computer and

payroll systems that will allow the class, wage, and damages issues in this case to be resolved with

relative ease.

98.    Because the elements of Rule 23(b)(3) are satisfied in this case, class

certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S.

393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit

meets the specified criteria to pursue his claim as a class action").

99.    Because Defendant has acted and refused to act on grounds that apply generally

to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to

the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also

appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

100.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

101.    At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

102.    At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

103.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

104.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

105.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

106.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

107.    At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform twelve (12) to fifteen (15) minutes or more of pre-shift computer boot-up and login time per shift, three (3) to five (5) minutes or more mid-shift computer boot-up and login time per shift, and three (3) to five (5) minutes or more post-shift computer shut down time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

108.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective is an integral and indispensable part of their jobs and these activities and the time associated with these activities is compensable.

109.    All of the off-the-clock worked performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

110.    In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

111.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207.

112.    In workweeks where Plaintiff and other FLSA Collective members worked slightly under forty (40) hours or more but the uncompensated off-the-clock work time put them over forty (40) hours, that "overtime gap time" should be paid at the regular rate and all associated overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage.  29 U.S.C. § 207.

113.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Agents to complete the pre-shift boot-up and log-in process and the mid-shift login process, as well as the post-shift shutdown process, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the boot-up, login, and shutdown work they performed, but did not.

114.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(On Behalf of the Rule 23 Nationwide Class)**
**BREACH OF CONTRACT**

115.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

116.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

117.     Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

118.     For example, Defendant offered to compensate Plaintiff at a minimum of $19.00 per hour if he agreed to perform services for Defendant as an Agent. Plaintiff accepted Defendant's offer and performed his duties as an Agent reliance on the offer.

119.     Defendant breached its contractual promises by failing to pay Agents at their fixed, pre-agreed upon hourly rate for all of the hours worked.

120.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to an agreed upon hourly rate over the mandated minimum wage within the applicable period.

121.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under

the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift, mid-shift, and post-shift work described herein.

122.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

123.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

124.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week, including the uncompensated off the clock time, i.e., pure "gap time" claims.

125.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

126.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## (On Behalf of the Rule 23 Nationwide Class)
## UNJUST ENRICHMENT

127.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

128.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

129.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

130.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

131.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

132.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

133.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

134.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

135.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

136.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kenneth Foltz, on behalf of himself and on behalf of the putative FLSA Collective and the Rule 23 Nationwide Class, requests judgment as follows:

a.    Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c.    Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II and III);

d.    Designating Plaintiff Kenneth Foltz as the Representative of the FLSA Collective action and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

e.    Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    Declaring Defendant's violations of the FLSA were willful;

g.    Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

h.    Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and

the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i.      Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: December 17, 2024                    Respectfully Submitted,

*/s/ Paul D. Snyder*
Paul D. Snyder KS #14537
SNYDER LAW FIRM, LLC
10955 Lowell Ave., Suite 710
Overland Park, KS 66210
Phone:  913-685-3900
psnyder@snyderlawfirmllc.com

*/s/ Jason J. Thompson*
Jason J. Thompson (pro hac vice application forthcoming)
Albert J. Asciutto (pro hac vice application forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: jthompson@sommerspc.com
Email: aasciutto@sommerspc.com

*Attorneys for Plaintiff, the FLSA Collective, and the Putative Class*