IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| **KENNETH FOLTZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**TDB COMMUNICATIONS, INC.**, a Kansas corporation,<br><br>Defendant. | Case No.: 2:24-cv-02581<br><br>Hon. Holly L. Teeter<br><br>Mag. Angel D. Mitchell |

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

COME NOW Plaintiff Kenneth Foltz, who respectfully moves the Court to enter a default judgment against Defendant TDB Communications, Inc. Defendant's failure to respond in any way to Plaintiff's Complaint necessitates a default judgment. However, Plaintiff only requests default judgement on his individual claim under the Fair Labor Standards Act. Plaintiff further requests that his class and collective claims be dismissed without prejudice. For the reasons set forth below, Plaintiff respectfully requests that this motion be granted and that the Court enter default judgment against Defendant on an individual basis in the total amount of $28,219.

I.     **PROCEDURAL HISTORY**

Plaintiff filed his class and collective action complaint in this action on December 17, 2024, alleging failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, on behalf of himself and a proposed collective of similarly situated employees; and breach of contract and unjust enrichment on behalf of a Rule 23 nationwide class. (Doc. 1). Plaintiff's complaint and summons were properly served on Defendant on January 13, 2025. (Doc. 4). Plaintiff's affidavit of service was filed January 23, 2025. (*Id.*).

Under Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant must serve an answer within 21 days of being served with the complaint and summons. Defendant's deadline to answer was February 3, 2025. Defendant failed to plead or otherwise file any other response to Plaintiff's Complaint. Defendant failed to appear in this matter. The Clerk of Court entered default against Defendant under Fed. R. Civ. P. 55(a) and Local Rule 77.2(a)(6) on February 21, 2025. (Doc. 6).

## II.    STATEMENT OF FACTS

"The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (quoting *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). The facts recited below are derived from the well-plead allegations contained in Plaintiff's Complaint.

Plaintiff Kenneth Foltz is a resident of Palmhurst, Texas. (Doc. 1 ¶ 22). Plaintiff worked for Defendant as a Call Center Agent at Defendant's brick and mortar facility located in Pharr, Texas, and also as a remote Agent for Defendant from his home, from approximately June 2018 until approximately June 2023. (*Id.*). Defendant compensated Plaintiff for his services as an Agent in the form of an hourly wage, most recently at the rate of $19.00 per hour. (*Id.*). Plaintiff was compensated on an hourly basis and classified as a non-exempt employee under the FLSA. (*Id.* ¶ 31).

According to Defendant's website, Defendant "offers creative call center management, technology, customer service, data analysis, and performance-based solutions to your inbound and outbound call center needs" delivering up to "a 2,000-person customer service staff housed at TDB's facilities to "handle staffing and operation of [] call center" projects for commercial and government customers which services include, but are not limited to, Telehealth, Telemedicine,

Medical Call Center Staffing, Training and Management, Clinical Healthcare Services, Mobile Healthcare Services, Air Medical Services, and Medical Claims. (*Id.* ¶ 24).

Throughout his employment with Defendant, Plaintiff was pressured to work substantial amounts of uncompensated, off-the-clock time as part of his job duties. (*Id.* ¶ 28). Once hired, Defendant provided Plaintiff with training on, *inter alia*, how to carry out his day-to-day job duties, including how to load and log into his computer programs at the beginning of the day, and how to log out at the end of the day; how to track his time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. (*Id.* ¶ 35). Plaintiff was instructed to be "phone ready" the moment his scheduled shift started. (*Id.* ¶ 36). This required Plaintiff to be logged in and loaded all his essential work-related computer programs and applications at the start of his shift so he could be prepared to take calls the moment his shift begins. (*Id.*). Plaintiff's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. (*Id.*). Thus, Defendant forced Plaintiff to perform the boot-up and login process before clocking into Defendant's timekeeping system. (*Id.*).

Defendant has similar policies which affected when Plaintiff could clock in or out during his lunch break, or after his scheduled shift was completed. (*Id.* ¶ 39). Plaintiff was trained or instructed to "clock out" before closing all work applications and systems to make certain he was "clocked out" the moment he was done fielding calls. (*Id.* ¶ 40). The pre-, mid-, and post-shift off-the-clock time Plaintiff spent booting up, logging in, and logging off his computer directly benefited Defendant and was integral and indispensable to his job responsibilities. (*Id.* ¶ 41). Despite knowing Plaintiff performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen. (*Id.* ¶ 42).

### A. Pre-Shift Off-the-Clock Work

Plaintiff was trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs before clocking in for his shift. (*Id.* ¶ 51). The pre-shift boot-up and login process generally consisted of the following steps: (1) turn on computer; (2) log into his VPN application; (3) log into Defendant's website portal to access company information; (4) log into the Microsoft Teams application; (5) open Outlook, check and respond to company emails, and ensure all of his systems were operational; (6) open several other project-specific applications; and (7) Plaintiff would only then be able "punch in" to his Avaya phone system and start receiving customer calls. (*Id.* ¶ 52). The boot-up and login process described above took substantial time on a daily basis, ranging from 12 to 15 minutes per shift, or more, depending on how fast/slow the computers and programs were operating. (*Id.* ¶ 53). Plaintiff was required to complete each of these tasks prior to "punching in," as he could not be "phone ready" until these tasks were complete. (*Id.* ¶ 54).

### B. Mid-Shift Off-the-Clock Work

Defendant promised Plaintiff one scheduled unpaid 30-minute meal period during each work shift. (*Id.* ¶ 48[1]). However, Plaintiff had to return from his meal period approximately three to five minutes early to have enough time to log back in to Defendant's programs and software prior to resuming his shifts. (*Id.* ¶ 49). This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid. (*Id.*).

### C. Post-Shift Off-the-Clock Work

Pursuant to Defendant's policies, training, and direction, Plaintiff was required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain

---

[1] Plaintiff mistakenly restarted the numbering of the complaint paragraphs at no. 48 on page 11 in his Complaint. Plaintiff will continue to cite paragraph numbers as they are in the Complaint.

he was "clocked out" the moment he stopped fielding calls. (*Id.* ¶ 58). The off-the-clock post-shift process took three to five minutes per shift. (*Id.* ¶ 59). Plaintiff was not paid for this post-shift off-the-clock work. (*Id.* ¶ 60).

Because Plaintiff typically worked scheduled shifts of at least forty (40) hours per week, the required off-the-clock work was nearly always overtime work, compensable at 1.5 times their regular rate of pay. (*Id.* ¶ 57). Defendant had express and constructive knowledge that Plaintiff worked off the clock and its policies and practices discouraged Plaintiff from recording all of his time worked. (*Id.* ¶¶ 58-59).

### III. ARGUMENT

#### a. Legal Standard

Plaintiff is entitled to the entry of default judgment against Defendant pursuant to Fed. R. Civ. P. 55(b). Entry of default judgment is left to the discretion of the trial court. *Nikwei v. Ross School of Aviation*, 822 F.2d 939, 941 (10th Cir. 1987) ("considerable deference is given the trial judge's determination regarding the default judgment since he is the person most familiar with the circumstances of the case and, thus, is in the best position to evaluate the good faith and credibility of the parties at the hearings."). Default judgment is warranted where, as here:

> the adversary process has been halted because of an essentially unresponsive party. In that instance the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

*In Re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991) (quoting *H.F. Livermore v. Aktiengesellschaft Gerbruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). "[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of

judgment by default serves as an incentive to meet this standard." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

### b. This Court Has Jurisdiction Over Plaintiff's FLSA Claims

This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*. (Doc. 1 ¶ 15). This Court also has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiff and Defendant reside in different states. (*Id.* ¶ 16).

Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. (*Id.* ¶ 18). Plaintiff, as an employee of Defendant, engaged in interstate commerce or in the production of goods for commerce; therefore, he is also covered by the FLSA on an individual basis. (*Id.*).

This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of Kansas, conducts business within the state of Kansas, and is registered with the Kansas Secretary of State. (*Id.* ¶ 19).

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District. (*Id.* ¶ 20).

### c. Plaintiff Has Established Defendant's Liability Under the FLSA and Entitlement to Damages

"The elements that must be shown [to state a claim of a FLSA violation] are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or a failure to keep payroll records in accordance with this Act." *Secretary of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008). Plaintiff has established: (1) Defendant was his employer covered by the FLSA; (2) as an employee of Defendant, he was an employee covered by the FLSA; (3) he worked unpaid, off-

the-clock, overtime hours; and (4) Defendant acted knowingly, willfully, and in reckless disregard of its obligations under the FLSA when it failed to make required overtime payments to Plaintiff. Plaintiff has thus proven his entitlement to damages under the Fair Labor Standards Act through the allegations in his well-plead Complaint. *See United States v. Craighead*, 176 Fed. Appx. 922, 924 (10th Cir. 2003) ("The defendant, by his default admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

## IV. DAMAGE CALCULATIONS

### a. Plaintiff's Damages

Under the FLSA, Defendant is "liable to the employee or employees affected in the amount of … their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Plaintiff submitted an affidavit, attached as Exhibit A, to establish the amount of damages to which he is entitled. Plaintiff worked for Defendant from June 2018 until approximately June 2023 at a rate of $19.00 per hour. (Ex. A, ¶¶ 1-2). Because Plaintiff has shown that Defendant's violation of the FLSA was willful, the 3-year statute of limitations applies, which stretches back from the filing of Plaintiff's Complaint to December 17, 2021. 29 U.S.C. § 255(a).

On an average work week, Plaintiff worked 102.5 unpaid overtime minutes, including his pre-shift, mid-shift, and post-shift off-the-clock work. (Ex. A, ¶ 8). Plaintiff's time-and-a-half overtime wages were $28.50 per hour. There are approximately 74 workweeks from December 17, 2021 to June 2023. Plaintiff is thus due FLSA overtime damages of $3,603 (((28.5/60) x 102.5) x 74) plus "an

7

additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiff's total damages are $7,206.

### b. Plaintiff is Entitled to An Award of Costs and Reasonable Attorneys' Fees

As the prevailing party on a Fair Labor Standards Act claim, Plaintiff is entitled to an award of a reasonable attorney's fee and costs of the action, to be paid by the Defendants. 29 U.S.C. § 216(b). "Whether to award attorney fees pursuant to violations of the Fair Labor Standards Act is not a matter left to discretion. Payment of attorney fees and costs to a prevailing party in an FLSA action is *mandatory*." *Wright v. U-Let-Us Skycap Services, Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986) (emphasis in original); *see also McKenzie v. City of Ottawa, Kan.,* No. CIV. A. 87-2153-O, 1989 WL 45392, at *1 (D. Kan. Apr. 24, 1989) ("the award of attorney's fees and costs to a prevailing party in an FLSA action is mandatory").

In calculating attorneys' fees, courts multiply a reasonable number hours and hourly rate to reach the "lodestar figure." *McKenzie* , 1989 WL 45392, at *1. Once calculated, this lodestar is presumptively valid as the amount of fees to be awarded. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

Plaintiffs' counsel in this case have attached to this Motion declarations itemizing their time expended litigating this case and their expenses. *See* Exhibit B, C. All of the work performed was reasonable and necessary for this case. The hourly rate for the attorneys who worked on the case are, on the whole, lower than prevailing rates charged for equivalent services by attorneys of similar skill, experience, and reputation. (Ex. B ¶ 22). Specifically, Senior Shareholder Jason Thompson charges $825 per hour; Shareholder Ethan Goemann charges $450 per hour; Associate Albert Asciutto charges $345 per hour; and Sommers Schwartz paralegals charge $195 per hour. (*Id.* ¶ 21). In addition, local counsel Paul Snyder charges $365 per hour. Ex. C. The record in this case and the

declarations submitted in support demonstrate that all the work done by these attorneys' was efficiently and effectively performed without duplication or waste. *See* Ex. B, C.

In total, Plaintiff's counsel seeks an award of $20,268. (Ex. B ¶ 27).

Plaintiff further seeks reimbursement of the costs of this action of $745. This was the expense of filing the case and hiring an outside courier to serve the summons and compliant. *See* Ex. B, C. These expenses were necessary and reasonable.

### V. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grants his Motion for Entry of Default Judgment, enter default judgment on Plaintiff's individual FLSA claims, dismiss without prejudice Plaintiff's collective and class claims, and award his full damages, attorneys' fees, and expenses associated with this action.

Dated: April 23, 2025                                       Respectfully Submitted,

*/s/ Paul D. Snyder*
Paul D. Snyder KS #14537
SNYDER LAW FIRM, LLC
10955 Lowell Ave., Suite 710
Overland Park, KS 66210
Phone: (913) 685-3900
psnyder@snyderlawfirmllc.com

Jason J. Thompson (P47184) (*pro hac vice*)
Ethan C. Goemann (NC Bar No. 50731) (*pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com
egoemann@sommerspc.com

*Attorneys for Plaintiff, the FLSA Collective, and the Putative Class*

## CERTIFICATE OF SERVICE

I certify that on April 16, 2025, the foregoing document and accompanying exhibits were served on Defendant's registered agent, TDB Communications.[2]

/s/ *Paul D. Snyder*
Paul D. Snyder

---

[2] An affidavit of service is attached as Exhibit D.