## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENNETH FOLTZ,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:24-cv-02581-HLT-ADM** |
| **TDB COMMUNICATIONS, INC.,** | |
| **Defendant.** | |

### <u>ORDER</u>

Plaintiff Kenneth Foltz filed this Fair Labor Standards Act (FLSA) case against Defendant TDB Communications, Inc. Defendant failed to appear and defend the case. Plaintiff therefore sought and was granted entry of default. Plaintiff now moves for default judgment. Doc. 12. He only requests default judgment on his individual claim under the FLSA. He asks the Court to dismiss his putative class and collective claims without prejudice. The Court grants Plaintiff default judgment and enters judgment in his favor in the total amount of $26,192.20.

### I.    BACKGROUND

Plaintiff filed this case against Defendant on December 17, 2024. Defendant was served, Doc. 4, but it has never entered an appearance or otherwise defended this lawsuit. Plaintiff sought and was granted entry of default. Docs. 5-6. Plaintiff filed a motion for default judgment. Doc. 12. Plaintiff served the motion on Defendant. Doc. 12-4. Defendant has not responded. The Court did not conduct a hearing because it can readily determine damages from the record.

## II.     STANDARD

Rule 55 provides a two-step process for entering default judgment. The first step is asking the clerk of court to enter default against a party who has failed to plead or defend the case. Fed. R. Civ. P. 55(a). This step is straightforward.

Once the clerk enters default, the party may move to the second step and apply to the court for entry of default judgment. Fed. R. Civ. P. 55(b)(2). A court considering a motion for default judgment under Rule 55(b) may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of allegations, or investigate any other matter. *See id.*; *see also Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016).

A court can only grant default judgment when certain criteria are satisfied. A court must determine that it has subject-matter and personal jurisdiction over the case and the defendant. *Mrs. Condies Salad Co. v. Colo. Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1216 (D. Colo. 2012). This requires only a prima-facie showing. *Id.* at 1217.

A court must also determine that default judgment is proper. *See id.* at 1218-19. A party seeking default judgment must show that the unchallenged facts create a legitimate basis for entry of judgment on the claim or claims. *Id.* at 1218. A court making this determination accepts as undisputed the well-pleaded factual allegations in the complaint and any exhibits. *Mathiason*, 187 F. Supp. 3d at 1274. However, a party is not entitled to default judgment as a matter of right. *Mrs. Condies*, 858 F. Supp. 2d at 1216. Default judgment is appropriate where "the complaint states an adequate legal basis for relief against a party in default." *Id.* at 1218.

Finally, a court must determine that the requested damages are available under Rule 54(c), which states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Damages are only awarded if the record adequately reflects the basis

for the damage award, which can be done via a hearing or by detailed affidavits. *Mathiason*, 187 F. Supp. 3d at 1275.

## III.   ANALYSIS

Plaintiff sought and received an entry of default under Rule 55(a). Doc. 6. The Court thus proceeds to the second step of the analysis and determines whether entry of default judgment is proper under Rule 55(b).

### A.    The Court has Jurisdiction.

The Court must first determine whether it has subject-matter and personal jurisdiction. *Mrs. Condies Salad Co.*, 858 F. Supp. 2d at 1216. As to subject-matter jurisdiction, Plaintiff asserts his claim under the FLSA. The Court therefore has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claim arises under federal law.

To determine whether personal jurisdiction exists in a federal-question case, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (internal quotation and citation omitted). Where, as here, the federal statutory scheme (FLSA) does not provide for nationwide service of process, *see Sergiyenkov v. McCuster Holiday Corp.*, 2018 WL 1508910, at *4 (D. Kan. 2018) (citations omitted), the Court must apply the law of the forum, *see* Fed. R. Civ. P. 4(k)(1)(A); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Kansas law allows jurisdiction to the full extent permitted by due process, so the analysis collapses into the constitutional analysis. *See Smith*, 2024 WL 1210297, at *1.

Due process allows a court to exercise personal jurisdiction if there are "minimum contacts" between the defendant and the forum state such that exercising jurisdiction would not

"offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also World-Wide Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291-92 (1980). Minimum contacts can be established under two theories: specific jurisdiction or general jurisdiction. *Smith*, 2024 WL 1210297, at *2.

Plaintiff alleges Defendant is organized under the laws of Kansas, conducts business within the state of Kansas, and is registered with the Kansas Secretary of State. Plaintiff further alleges a substantial portion of the events giving rise to Plaintiff's claim occurred in Kansas. The Court is therefore satisfied it may exercise personal jurisdiction over Defendant.

**B.    Plaintiff is Entitled to Default Judgment on the Claims.**

The Court next determines whether the unchallenged facts create a legitimate basis for entry of judgment on the claim or claims. *Mrs. Condies Salad Co.*, 858 F. Supp. 2d at 1218. Plaintiff asserts Defendant violated the FLSA because it did not pay him overtime wages for off-the-clock work before, during, and after his regularly scheduled shifts.

The FLSA requires an employer to pay its employees "one and one-half times the regular rate at which he is employed" for time worked in excess of 40 hours in a workweek. *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, 487 F. Supp. 3d 1081, 1086 (D. Kan. 2020) (quoting 29 U.S.C. § 207(a)(2)). To succeed on an FLSA overtime claim, "the plaintiff has the burden of proving that he performed work for which he was not properly compensated." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012). "To support such a claim, the plaintiff must show that she actually worked overtime, that the amount of overtime was shown by justifiable and reasonable inference, and the employer had actual or constructive knowledge of the overtime." *McMillin v. Foodbrands Supply Chain Servs., Inc.*, 272 F. Supp. 2d 1211, 1217 (D. Kan. 2003) (internal quotation and citation omitted).

Defendant employed Plaintiff as a remote Call Center Agent. Plaintiff alleges facts showing Defendant was covered by the FLSA and he, as an employee, was covered by the FLSA. He alleges he worked unpaid, off-the-clock, overtime hours for Defendant. Specifically, Plaintiff claims Defendant trained and expected him to work off-the-clock pre-shift, mid-shift, and post-shift. He was expected to complete several tasks such as logging into Defendant's website portal and Microsoft Teams; opening, checking, and responding to email; and opening other project-specific applications before he "punched in." He had to be "phone ready" when beginning his shift. These tasks took approximately twelve to fifteen minutes per shift. Similarly, Plaintiff had to return from his unpaid meal period three to five minutes early to log back in before resuming work. And he had to clock out at the end of his shift before closing all work applications and systems. This took another three to five minutes each time. Plaintiff alleges Defendant knew of and required him to complete these tasks off-the-clock. Defendant thus acted knowingly, willfully, and in reckless disregard of its FLSA obligations when it did not pay Plaintiff required overtime wages.

Given Defendant's default, these facts are unchallenged. The Court accepts them as undisputed. *Mathiason*, 187 F. Supp. 3d at 1274. The Court also finds these undisputed facts create a legitimate basis for entry of judgment on Plaintiff's claim. *See Mrs. Condies*, 858 F. Supp. 2d at 1218. The Court therefore finds Plaintiff is entitled to default judgment on his claim for overtime wages under the FLSA.

### C. Plaintiff is Entitled to Damages.

Plaintiff seeks several types of damages in the complaint, including damages, liquidated damages, attorneys' fees, and costs. *See* Doc. 1 at 26-27. As noted above, the types of damages available on default judgment are limited to those in the complaint. Fed. R. Civ. P. 54(c). "Plaintiff

must establish that the amount requested is reasonable under the circumstances." *Olivas v. Bentwood Place Apartments, LLC*, 2010 WL 2952393, at *4 (D. Kan. 2010).

### 1.    Overtime Pay

The FLSA makes a defendant "liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment." *Olivas*, 2010 WL 2952393, at *7.

Plaintiff submitted a declaration regarding his damages.[1] Plaintiff indicates that he worked for Defendant from June 2018 through June 2023 at a rate of $19.00 per hour. His time-and-a-half overtime wages were $28.50 per hour. He worked an average of 102.5 unpaid overtime minutes per workweek. This included his pre-shift, mid-shift, and post-shift off-the-clock work. And there are approximately 74 workweeks from December 17, 2021, through June 2023. (The statute of limitations is three years for willful conduct. 29 U.S.C. § 255(a).) This works out to FLSA overtime damages of $3,603, plus "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The result is total damages in the amount of $7,206.

In light of the evidence in the record, the Court finds a damages award of $7,206 is appropriate.

### 2.    Attorneys' Fees

Prevailing parties are entitled to reasonable attorneys' fees and costs under the FLSA. 29 U.S.C. § 216(b). The party claiming fees must prove that he was the prevailing party and that

---

[1]   The Court's calculations are slightly different from Plaintiff's. But the Court notes that Plaintiff uses conservative numbers and has used a reasonable method to estimate his damages. The Court finds his methodology reasonable and appropriate for calculation purposes.

the fee request is reasonable. *Id.* Given that the Court has found Plaintiff is entitled to default judgment on his substantive claim, he is the prevailing party. *See Townley v. Servicemaster Co., LLC*, 2017 WL 5517948, at *2 (D. Kan. 2017).

The Court therefore turns to whether the fee request is reasonable. The amount of fees to be awarded is within the Court's discretion. *Bennett v. Luigi's Italian Rest.*, 2020 WL 1503472, at *10 (D. Kan. 2020). The burden is on the party seeking attorneys' fees. *See Townley*, 2017 WL 5517948, at *2. The starting point for determining whether a fee request is reasonable is the number of hours multiplied by a reasonable hourly rate, known as the lodestar. *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010). "In setting the hourly rate, the court should establish, from the information provided to it and from its own analysis of the level of performance and skill of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits, calculated as of the time the court awards fees." *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1263-64 (D. Kan. 2017) (internal quotation and citation omitted). If the moving party establishes that the hours spent and rate applied are reasonable, the lodestar amount is presumed to be reasonable. *Townley*, 2017 WL 5517948, at *2.

Once the lodestar is determined, the Court may adjust the figure upward or downward using several factors. *Id.*

> Those factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* The Court may incorporate these factors in calculating the lodestar. *See id.*

**Rates.** Here, four attorneys (including one acting as local counsel) and one paralegal worked on this case for Plaintiff. Their "blended" hourly rate is approximately $344. Counsel submitted declarations identifying their respective rates and their experience. Jason Thomspon identified other hourly rates for comparison purposes. But Thompson identified only his own credentials, not those of others who worked on the case. He also did not detail what work the attorneys and paralegal performed, other than the general "pre-litigation investigation and research, litigation pleadings, or default judgment motion practice." Doc. 12-2 at 7.

**Hours.** Counsel submitted declarations stating that they collectively spent 59 hours working on the case. Thompson represents that he reviewed the time records and believes they are reasonable as to "time spent, work allocation and totals, as well as being absolutely necessary to reach the settlement in this case." Doc. 12-2 at 6. But he does not offer the Court a breakdown of what each team member did. It is the Court's role, not counsel's, to determine whether the hours spent (and the rates) are reasonable.

**Lodestar.** The Court's overarching concern is that counsel did not submit detailed information for the Court to review. Despite this shortcoming, the information provided is not wildly concerning to the Court in the aggregate. Although the Court harbors some doubt whether the individual rates are reasonable for the geographic area, the overall blended rate is not entirely offensive to the Court's sense of reasonableness. *See James v. Boyd Gaming Corp.*, 2022 WL 4482477, at *15 (D. Kan. 2022) (approving blended rate of $367 in FLSA settlement and surveying other similar blended rates); *Bennett*, 2020 WL 1503472, at *10 (allowing $350 per hour in Title VII default judgment although damages not allowed on FLSA claims); *Sergiyenko*, 2018 WL 1508910, at *9 (reducing fee of $550/hour for attorney with fourteen years of experience in

employment litigation, including FLSA); *Barbosa v. Nat'l Beef Packing Co.*, 2015 WL 4920292, at *10 (D. Kan. 2015) (finding reasonable fees of between $180 and $425 in FLSA case). Likewise, the hours worked are a little questionable given the early stage of the case and the generic or missing information on billing allocation, but the total number of hours is not entirely out-of-line with what the Court would expect for a case in this posture. The Court finds that a 10% reduction is appropriate to address the shortcomings in the information and its lingering concerns on rates and hours. Once reduced, the other factors support the appropriateness of this amount. The Court thus awards $18,241.20 in attorneys' fees.

### 3.    Costs

Plaintiff seeks $745.00 in costs. Based on the evidence in the record, *see* Doc. 12-2 at 9, 12-3 at 1, the Court finds an award of costs in this amount is appropriate.

## IV.    CONCLUSION

The Court finds sufficient evidence and a legal basis to grant Plaintiff default judgment on his claims and awards Plaintiff damages in the amount of $26,192.20, which is comprised of: $3,603 in lost overtime pay, $3,603 in liquidated damages, $18,241.20 in attorneys' fees, and $745.00 in costs.

THE COURT THEREFORE ORDERS that Plaintiff's Motion for Default Judgment (Doc. 12) is GRANTED as stated in this order. Plaintiff's putative class and collective claims are DISMISSED WITHOUT PREJUDICE. Judgment SHALL BE entered in favor of Plaintiff and against Defendant in the amount of $26,192.20. With entry of this judgment, this case is closed.

IT IS SO ORDERED.

Dated: July 14, 2025                    /s/ *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE